UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

CAPAX DISCOVERY, INC.,  )
WALKER GLOBAL SOLUTIONS NAPLES, INC.,  )
JOHN BAIOCCO, WYNN HOLDINGS, LLC,  )
THOMSON FEDERAL SOLUTIONS, LLC,  )
)
    Plaintiffs,  )
)
v.  )    Case No. 1:17-cv-00500
)
AEP RSD INVESTORS, LLC, ZOVY  )
MANAGEMENT LLC, ZOVY INCENTIVE  )
LLC, ALTA EQUITY PARTNERS I  )
MANAGERS, LLC, JESSICA REED, TIMOTHY  )
DIBBLE, TIMOTHY ALEXSON, GRACE  )
CONNELLY,  )
)
    Defendants.  )

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS, STRIKE, AND COMPEL ARBITRATION**
(Doc. 9)

On May 11, 2017, Plaintiffs Capax Discovery, Inc. ("Capax"), Walker Global Solutions Naples, Inc., John Baiocco, Wynn Holdings, LLC, and Thomson Federal Solutions, LLC brought this New York Supreme Court suit in Erie County, alleging fraudulent inducement, negligent misrepresentation, and breach of contract claims arising out of the sale of Zovy, LLC ("Zovy"). On June 5, 2017, Defendants AEP RSD Investors, LLC ("AEP RSD"), Zovy Management LLC ("Zovy Management"), Zovy Incentive LLC ("Zovy Incentive"), Alta Equity Partners I Managers, LLC ("Alta"), Timothy Dibble, Jessica Reed, Timothy Alexson, and Grace Connelly removed the case to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.

Pending before the court is Defendants' motion to dismiss for failure to state a claim upon which relief may be granted and failure to plead fraud with specificity.

Defendants have also moved to strike Plaintiffs' prayers for equitable relief, lost profits, compensatory damages, punitive damages, disgorgement, and attorney's fees. Finally, Defendants request an order compelling Plaintiffs to submit their breach of contract claim to arbitration pursuant to provisions in the Zovy Purchase Agreement ("the Agreement"). After oral argument on September 26, 2017, the court took the pending motion under advisement.

Plaintiffs are represented by Benjamin D. Burge, Esq. and David Ross Pfalzgraf, Jr., Esq. Defendants are represented by Joseph L. Clasen, Esq., Sandra Marin Lautier, Esq., and Patrick W. Begos, Esq.

## I. The Complaint's Allegations.

The following facts are derived from allegations in the Complaint and the Agreement between Zovy's sellers and buyers which the parties agree is integral to the Complaint.[1] Plaintiff Capax is a Florida corporation with its principal place of business in New York. Plaintiff Walker Global Solutions Naples, Inc. is a Florida corporation. Plaintiff Wynn Holdings, LLC is a limited liability company organized under the laws of New Jersey. Plaintiff Thomson Federal Solutions, LLC is a limited liability company organized under the laws of Florida.

Defendants AEP RSD, Zovy Management, Zovy Incentive, and Alta are each limited liability companies organized under the laws of Delaware with principal places of business in Massachusetts. Individual Defendants Dibble, Reed, Alexson, and Connelly are natural persons domiciled in Massachusetts.

On September 23, 2016, Defendants sold data archiving company Zovy to Capax pursuant to the Agreement. Prior to the sale, Zovy and Capax each marketed email and

---

[1] The parties have submitted declarations in opposition to and in support of the pending motion. As these declarations are not integral to the Complaint, and as the parties ask the court to refrain from converting the pending motion to a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), the court will disregard them. *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202-03 (2d Cir. 2013) (holding that a motion to dismiss is converted to one for summary judgment only when "matters outside the pleadings are presented to and not excluded by the court[.]").

2

data archiving software, which allowed end users to easily store and retrieve email and other electronic data in large volumes. Both companies relied on the same third-party software, Autonomy Consolidated Archive ("ACA"), to create their archiving solutions. Ultimately, Capax acquired the exclusive rights to ACA and thus possessed the option of declining to extend Zovy's license to use that software. Faced with the prospect of losing its ACA license, Zovy engaged Capax regarding a possible sale. Capax alleges that its sole interests in Zovy were two of its "marquee clients[,]" the United States Veterans Affairs Administration ("VA") and Chicago Bridge & Industry ("CB&I"). (Doc. 1-2 at 15, ¶ 31.) In light of Capax's allegedly strong bargaining position, Zovy agreed to a purchase price of one dollar, coupled with an earn-out provision that granted Defendants 50% of "monies generated" by Zovy's VA contract for five years after the deal closed. (Doc. 1-1 at 16-17, ¶ 29.)

In furtherance of the sale, Plaintiffs allege that Defendants engaged in fraudulent accounting practices that violated Generally Accepted Accounting Principles ("GAAP") in order to inflate Zovy's value and induce Capax to consummate its purchase. Specifically, Plaintiffs claim that Defendants misstated the value of Zovy's VA contract; represented the CB&I contract as an asset when in fact it was a liability; generated invoices that were never sent for payment to create the impression of on-going business; generated invoices for accounts receivable that had previously been written off; and falsely claimed intangible intellectual property assets of $500,000 in software that it did not own. Plaintiffs allege that these and other alleged acts and omissions violated the representations and warranties in § 5 of the Agreement. Plaintiffs assert that they discovered Defendants' alleged malfeasance only while examining Zovy's business records after the closing.

Plaintiffs subsequently forwarded a "Book Value Certificate" to Defendants, setting forth the alleged discrepancies and noting the corrections that were allegedly necessary to accurately reflect Zovy's financials. Plaintiffs allege that Defendant Reed, as the member representative of AEP ASD, returned a statement of objections to the Book Value Certificate that disputed Capax's proposed corrections. Thereafter,

3

Defendants allegedly failed to provide justification for their objection to Capax's revised valuation.

In their Complaint, Plaintiffs allege the following causes of action: Count I: fraudulent inducement seeking equitable relief in the form of rescission of the Agreement based on misrepresentations of material fact leading up to Zovy's sale; Count II: fraudulent inducement seeking money damages anticipated to exceed $10 million based on the same misrepresentations of material fact set forth in Count I; Count III: negligent misrepresentation based on the same false statements alleged in Counts I and II; and Count IV: breach of contract based on alleged violations of the representations and warranties contained in the Agreement.

Defendants seek dismissal of Counts I, II, and III, arguing that those allegations are duplicative of Plaintiffs' breach of contract claim. In the alternative, they contend these claims fail to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). Defendants seek dismissal of Plaintiffs' breach of contract claim, asserting that the Agreement requires that claim to be submitted to arbitration.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a plaintiff's complaint under Fed. R. Civ. P. 12 is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

Because Plaintiffs' first three causes of action sound in fraud, they must plead "with particularity the circumstances" that constitute the basis for their claims. Fed. R. Civ. P. 9(b). Accepting Plaintiffs' well-plead allegations as true, *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017), the court applies a four part test to determine whether Plaintiffs' fraud claims are sufficient. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994). First, the complaint must "specify the statements that the plaintiff contends were fraudulent[.]" *Chorches*, 865 F.3d at 81. Second, Plaintiffs must "identify the speaker[.]" *Id.* Third, Plaintiffs must "state where and when the statements were made[.]" *Id.* And fourth, Plaintiffs must "explain why the statements were fraudulent." *Id.*

"[A]llegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). Where this "relaxed" standard is invoked, however, the "complaint must adduce specific facts supporting a strong inference of fraud[.]" *Id.* If malice or some other form of mens rea is required to support a claim for fraud, those allegations "may be averred generally." *Id.* (internal quotation marks omitted). If mens rea is required and alleged in general terms, plaintiffs are still required to "plead the factual basis that gives rise to a strong inference of fraudulent intent." *Id.* (internal quotation marks omitted).

### B. Whether Plaintiffs' Fraud Claims are Duplicative of Their Breach of Contract Claim.

New York law governs Plaintiffs' claims for fraudulent misrepresentation and fraudulent inducement. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (applying New York law to fraud claim arising under diversity jurisdiction). Counts I and II allege fraudulent inducement, the essential elements of which are as follows: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such

reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). Count III alleges negligent misrepresentation, which requires proof of "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information[.]" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585 (N.Y. 2007)).

As a threshold matter, Defendants contend that New York law prohibits Plaintiffs from repackaging their breach of contract claims as fraud claims. On this basis, they seek dismissal of Counts I through III, asserting that each allegedly fraudulent statement is encompassed by a representation or warranty in the Agreement, and therefore Plaintiffs have only alleged breaches of the Agreement itself. "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d. Cir. 2012) (citing *Clark-Fitzpatrick v. Long Island R.R. Co.*, 516 N.E.2d 190, 193-94 (N.Y. 1992)).

Accepting Plaintiff's factual allegations as true, the Complaint plausibly alleges that Defendants made false statements and provided incorrect or misleading financial information in order to convince Plaintiffs to purchase Zovy. Although some of those allegedly fraudulent statement are encompassed in the Agreement, others are not. Fraudulent statements that induce a party to enter into a contract are actionable in tort, regardless of the enforceability of the contract itself. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980) (holding that a defendant who made "fraudulent representations . . . 'is subject to liability in tort whether the agreement is enforce[eable] or not.'") (quoting *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 151 N.E.2d 833, 836 (N.Y. 1958)). Under New York law, a plaintiff may therefore maintain parallel contract and tort actions where the allegations "involve misstatements and omissions of present facts, not contractual promises regarding prospective performance." *Merrill*

*Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007). This is because "'[a] warranty is not a promise of performance, but a statement of present fact.'" *Id.* (quoting *First Bank of the Americas v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21 (N.Y. App. Div. 1999)). Recognizing this distinction, the Second Circuit has held:

> Defendant's allegations in this case involve misstatements and omissions of present facts, not contractual promises regarding prospective performance. A misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty. . . . That the alleged misrepresentations would represent, if proven, a breach of the contractual warranties as well does not alter the result. A plaintiff may elect to sue in fraud on the basis of misrepresentations that breach express warranties. Such cause of action enjoys a longstanding pedigree in New York.

*Id.* (internal quotation marks and citations omitted).

Zovy's financial statements, outstanding liabilities, books, and records are incorporated into the Agreement at §§ 5.8, 5.9, 5.16, 5.17, and 5.22 as warranties. However, because New York law allows Plaintiffs to pursue a claim for fraudulent inducement if those same statements induced them to sign the Agreement, their presence in the Agreement does not negate a fraud claim. *See RKB Enters. Inc. v. Ernst & Young*, 582 N.Y.S.2d 814, 816 (N.Y. App. Div. 1992) ("A party fraudulently induced to enter into a contract may join a cause of action for fraud with one for breach of the same contract"). The general merger clause in § 9.4 does not change the analysis. *See Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004-05 (N.Y. 1986) (holding that a fraudulent misrepresentation "which was the inducement for the contract[] . . . was neither duplicative" of a contract claim, "nor barred by the general merger clause contained in the contract.") (internal citations omitted). This is because "a general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract[.]" *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 598 (N.Y. 1959).

Because Plaintiffs' fraud claims assert pre-Agreement conduct in addition to the alleged contractual breaches, their claims are not wholly duplicative and Defendants' motion to dismiss Counts I, II, and III on that basis is DENIED.

## C. Whether Plaintiffs Have Pled Fraud With Sufficient Particularity.

Under Fed. R. Civ. P. 9(b), a claimant "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 580, 583 (2d Cir. 2005) (applying particularity requirement to claims for fraudulent inducement and negligent misrepresentation); *see also B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 484 (S.D.N.Y. 2010) ("Just as with intentional misrepresentation, negligent misrepresentation must be pled with particularity."). In seeking dismissal, Defendants argue that Counts I through III of the Complaint fail to identify fraudulent statements, who made them, where and when each fraudulent statement was made, to whom it was made, and why Plaintiffs contend it was fraudulent. Standing alone, Defendants are correct that Counts I through III suffer from these deficiencies. However, because these counts incorporate the preceding paragraphs by reference, those defects are cured. *See Exelis*, 824 F.3d at 25 (Rule 9 exists "to provide a defendant with fair notice of a plaintiff's claim[.]").

For example, Plaintiffs allege that Defendants "fraudulently inflated Zovy's financial performance and contractual relationships[,]" (Doc. 1-2 at 17, ¶ 36), by "represent[ing] that Zovy's agreement with CB&I was a $1,375,000 annual recurring hosted service contract. In reality, however, this agreement only was a one-time conversion project, making future earning[s] uncertain." *Id.* at ¶ 36(A). They further allege that Defendants informed Plaintiffs that the VA contract represented only future profits with no significant liabilities, however, Zovy was allegedly obligated to provide between $600,000 and $1 million in an immediate hardware investment and that Defendants misrepresented the nature of the VA's software licenses, inaccurately depicting them as Zovy-issued licenses when in fact they were "already existing on-premises licenses owned by the VA[.]" (Doc. 1-2 at 18, ¶ 36(C).)

Plaintiffs further allege that "Zovy's financial statements had been prepared fraudulently and that Alta and the other defendants' representations as to the accuracy of the financial statements had been false[,]" *id.* at 19, ¶ 38, and that Zovy's 2015 Audited Financial Statements contained misstatements of Zovy's fixed assets in relation to the VA

8

contract, totaling at a minimum $167,156 in misrepresented fixed assets. Although the Agreement set forth a valuation of Zovy's intangible assets at $2.9 million, Plaintiffs allege that at least $500,000 of that amount was attributable to intellectual property not actually owned by Zovy, but rather owned by HP and used by Zovy under a license.

Plaintiffs assert that "[Defendants'] accountants[,]" *id.* at 20, ¶ 40(C), disclosed to Plaintiffs after closing that several invoices were generated but explicitly held back from Zovy clients, and that Defendants caused Zovy to invoice UT Health in 2016 but the amount represented as due had in fact been written off during the 2015 audit of Zovy's financials. They allege that Zovy held an outstanding contractual obligation to CB&I that rendered the entire contract a contingent liability, whereas it had been reflected in Zovy's financials as an asset.

Collectively, Plaintiffs' allegations "specify the statements that the plaintiff contends were fraudulent," *Chorches*, 865 F.3d at 81, and "'provide [Defendants] with fair notice of [Plaintiffs'] claim[s], [sufficient] to safeguard [Defendants'] reputation from improvident charges of wrongdoing, and to protect [Defendants] against the institution of a strike suit.'" *Exelis*, 824 F.3d at 25 (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). As a result, Defendants' motion to dismiss Counts I, II, and III for failure to plead fraud with particularity under Fed. R. Civ. P. 9(b) is DENIED.

### D. Whether Plaintiffs Have Improperly Grouped Defendants.

Defendants note that Plaintiffs ascribe each fraudulent misrepresentation to "Alta and the other defendants" which Defendants contend is improper grouping under *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (affirming dismissal under Fed. R. Civ. P. 9(b) where Plaintiffs attributed fraud to "defendants" generally). Plaintiffs counter that grouping defendants is permissible where the defendants are "plural authors" of the fraudulent statements. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 173 (2d Cir. 2015) (holding that "identification of the group suffices to meet the particularity of attribution required by Rule 9(b)" where specific misrepresentations

9

in offering documents are at issue and defendants acted collectively in making the alleged misstatements).

In the Second Circuit, for pleading purposes a plaintiff must generally attribute a fraudulent statement to an identified defendant. *See Luce*, 802 F.2d at 54 (holding that generally, plaintiffs must "connect allegations of fraudulent representations to particular defendants"). However, statements with plural authors made in connection with a contract of sale may be attributed to "defendants" generally.

> Where a plural author is implied by the nature of the representations – for instance, where, as here, (1) the alleged fraud is based on statements made in the offering materials and (2) the complaint gives grounds for attributing the statements to the group – group pleading may satisfy the source identification required by Rule 9(b).

*Loreley*, 797 F.3d at 173; *see also Luce*, 802 F.2d at 55 ("[N]o specific connection between fraudulent representations in the Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question.").

In this case, the vast majority of the allegedly fraudulent statements, like those in *Loreley*, were "official materials produced in connection with the sale[,]" 797 F.3d at 173, because they were contained in Zovy's financials and outstanding contracts which were incorporated into or referenced by the Agreement. As a result, "[t]he entities named in the complaint and treated collectively were . . . 'insiders or affiliates[,]'" *id.* (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990)), and "Plaintiffs are not obliged to disaggregate these affiliates to pursue their fraud claim." *Id.*

While Plaintiffs' allegations with respect to fraudulent conduct by the individual defendants are sparse, under New York law "[a] corporate officer who participates in the commission of a tort may be held individually liable . . . regardless of whether the corporate veil is pierced[.]" *Bd. of Managers of S. Star v. WSA Equities, LLC*, 30 N.Y.S.3d 876, 877 (N.Y. App. Div. 2016) (quoting *Peguero v. 601 Realty Corp.*, 873 N.Y.S.2d 17, 21 (N.Y. App. Div. 2009)). Plaintiffs allege that Defendant Dibble "was and is the primary principal of defendant Alta[,]" that Defendant Reed "was and is the

primary principal of defendant AEP[,]" that Defendant Alexson "was the accounting manager for defendant Alta[,]" and that Defendant Connelly "was the Chief Financial Officer of Zovy during the period of time that defendants AEP, Zovy Management, and Zovy Incentive were members of Zovy, and Alta was the manager of Zovy." (Doc. 1-2 at 11.) Accepting these factual allegations as true, Plaintiffs' Complaint plausibly alleges that the individual Defendants were "insiders or affiliates participating in the offer" to sell Zovy. *Luce*, 802 F.2d at 55. Grouping these individuals with the corporate entities for which they were principals is therefore permissible at this stage of the litigation. *See id.* (permitting plaintiffs to group individual members with limited liability corporations for certain fraud claims).

For these reasons, Plaintiffs have sufficiently identified the source of the alleged fraudulent statements at the pleading stage and Defendants' motion to dismiss the Complaint on that basis is DENIED.

### E. Whether Plaintiffs Have Adequately Plead Reliance.

Defendants seek dismissal on the further ground that the Complaint failed to plead reasonable reliance in Counts I and II because Plaintiffs expressly disclaimed any such reliance in the Agreement. *See Danann Realty Corp.*, 5 N.Y.2d at 320-21 (affirming dismissal where plaintiff "in the plainest language announced and stipulated that it [was] not relying on any representations as to the very matter as to which it [claimed] it was defrauded. Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations"). Section 5.27 of the Agreement provides that:

> Except as otherwise expressly set forth in Section 4 and Section 5 of this Agreement, [no party to the Agreement] has made any representations or warranties of any kind or nature, express or implied, including as to the accuracy or completeness of any information regarding [Zovy] furnished or made available to [Capax] or any of its Affiliates or their respective representatives, the condition, value or quality of the Business or the assets of [Zovy] or the merchantability, usage, suitability or fitness for any particular purpose with respect to such assets or Business, or any part thereof, or as to the workmanship thereof, or the absence of any defects therein, whether latent or patent.

(Doc. 1-1 at 55.) The merger clause states that:

> This Agreement, *including the Disclosure Statement schedules and exhibits hereto, and the instruments and other documents delivered pursuant to this Agreement,* contain the entire understanding and agreement of the parties . . . and supersedes all prior and or contemporaneous understandings and agreements of any kind and nature [whether written or oral][.]

(Doc. 1-1 at 61) (emphasis supplied). Because § 5.27 excludes the representations and warranties listed in §§ 4 and 5 from the general disclaimer, warranties of Zovy's financial statements (§ 5.8) representing that there are no "undisclosed liabilities" (§ 5.9) and warranting the accuracy of all "books and records" (§ 5.22) are not subject to the Agreement's merger clause. To the contrary, such representations remain part of the Agreement.

Plaintiffs' claims arise out of alleged misrepresentations regarding Zovy's assets, outstanding liabilities, and contractual relationships, including claims that Defendants generated false invoices, inflated claims of intellectual property ownership, and provided misleading or false descriptions of accounts receivable. These claims allege false representations in Zovy's "books and records" and "financial statements[,]" which are expressly exempted from the merger clause. Plaintiffs allege that they "believ[ed] the truth and rel[ied] upon all of the representations made by . . . the . . . defendants in the Agreement and the materials provided thereunder, including specifically the financial statements." (Doc. 1-2 at 22, ¶ 43.) In this respect they allege misrepresentations based on facts uniquely within certain Defendants' knowledge. *See Yurish v. Sportini*, 507 N.Y.S.2d 234, 235 (N.Y. App. Div. 1986) (observing that "fraudulent sellers may not invoke even specific disclaimer clauses in order to preclude evidence of oral misrepresentations 'if the facts allegedly misrepresented are peculiarly within the seller's knowledge'") (quoting *Hi-Tor Indus. Park v. Chem. Bank*, 494 N.Y.S.2d 751, 751 (N.Y. App. Div. 1985)). Although Defendants are correct that the "peculiar knowledge" exception is applied more sparingly in the context of a sophisticated buyer, *see Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 448 (S.D.N.Y. 2006) ("the more sophisticated the buyer, the less accessible the information must be to be considered within the seller's

peculiar knowledge") (internal quotation marks omitted), the court does not weigh the evidence on a motion to dismiss. *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006) (noting that a court adjudicating a motion to dismiss "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it."). For the foregoing reasons, Plaintiffs have adequately plead reliance and Defendants' motion to dismiss the Complaint based on the Agreement's merger clause is DENIED.

### F. Whether Plaintiffs Have Adequately Alleged a Special Relationship in Their Negligent Misrepresentation Claim.

Plaintiffs' negligent misrepresentation claim relies on virtually all of the same facts as their fraudulent inducement claims, but pleads a lesser level of mens rea in the alternative. Plaintiffs allege that they "were the entities for whose guidance the financial information was supplied. The defendants knew that Capax and the plaintiffs reasonably would rely on the defendants' representations, and the defendants intended to influence Capax and the plaintiffs through those representations." (Doc 1-2 at 27, ¶ 66.) Defendants seek dismissal of this claim pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to allege a special relationship which is an essential element of a negligent misrepresentation claim under New York law. Plaintiffs counter that at least some of them had a special relationship with some of the Defendants.

"[A] negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage[.]" *White v. Guarente*, 372 N.E.2d 315, 319 (N.Y. 1977).

> Liability in such cases arises only where there is a duty . . . to give the correct information . . . . There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally, the relationship of the parties . . . must be such that . . . the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.

13

*Eiseman v. State*, 511 N.E.2d 1128, 1135 (N.Y. 1987) (internal quotation marks and citation omitted); *see also Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). "In the commercial context, a duty to speak with care exists when 'the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information.'" *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996) (quoting *Int'l Prods. Co. v. Erie R.R. Co.*, 155 N.E. 662, 664 (N.Y. 1927)). New York courts have recognized that, in certain circumstances, professionals with particularized expertise have a duty to speak with a level of care commensurate with that expertise. In "'the absence of obligations arising from the speaker's professional status' in the commercial context, 'there must be some identifiable source of a special duty of care' in order to impose tort liability[.]" *Murphy v. Kuhn*, 682 N.E.2d 972, 974 (N.Y. 1997) (quoting *Kimmell*, 675 N.E.2d at 454).

The presence of a special relationship, in the absence of a professional duty of care, "generally raises an issue of fact." *Kimmell*, 675 N.E.2d at 454. However, where the complaint lacks "allegations showing a relationship[,]" a claim alleging negligent misrepresentation must be dismissed. *Mandarin Trading*, 944 N.E.2d at 1109.[2] As a general rule, "[a] special relationship does not arise out of an ordinary arm's length business transaction between two parties[.]" *U.S. Express Leasing, Inc. v. Elite Tech. (N.Y.), Inc.*, 928 N.Y.S.2d 696, 700 (N.Y. App. Div. 2011).

Plaintiffs allege that Defendants "failed to exercise [due] care and competence in obtaining and communicating the information which Capax and the plaintiffs were justified in expecting." (Doc. 1-2 at 27, ¶ 65.) They state that "[Plaintiffs] were the

---

[2] *See, e.g., High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377, 382-83 (N.Y. App. Div. 2011) (dismissing negligent misrepresentation claims where complaint contained no allegation of any relationship between the plaintiffs and the directors of defendant corporation); *Niagara Foods, Inc. v. Ferguson Elec. Serv. Co.*, 927 N.Y.S.2d 254, 256 (N.Y. App. Div. 2011) (dismissing complaint where the parties to a contractual dispute were in "an ordinary business relationship"); *Ravenna v. Christie's Inc.*, 734 N.Y.S.2d 21, 22 (N.Y. App. Div. 2001) (dismissing a negligent misrepresentation claim where a prospective art buyer met only once with the representative of an auction house).

entities for whose guidance the financial information was supplied. The defendants knew that Capax and the plaintiffs reasonably would rely on the defendants' representations[.]" *Id.* at ¶ 66. These allegations amount to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. They do not support a conclusion that the relationships between Defendants and Plaintiffs were anything other than those of "an ordinary arm's length business transaction[.]" *Elite Tech.*, 928 N.Y.S.2d at 700. As such, Plaintiffs have not alleged a special relationship and therefore fail to state a claim for negligent misrepresentation under New York law. Defendants' motion to dismiss Count III is GRANTED and Plaintiffs are GRANTED leave to amend.

### G. Whether Plaintiffs' Claim for Equitable Rescission is Precluded by Their Claims for Money Damages.

Defendants move to strike Plaintiffs' request for rescission of the Agreement, contending that equitable remedies are foreclosed by Plaintiffs' request for money damages. Under New York law,

> [a]s a general rule, rescission of a contract is permitted for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual, or technical breach, but . . . only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract[.]

*Lenel Sys. Int'l, Inc. v. Smith*, 824 N.Y.S.2d 553, 554 (N.Y. App. Div. 2006) (internal quotation marks omitted). At least for pleading purposes, Plaintiffs allege this magnitude of breach, seeking not only recovery of a nominal purchase price but a return to the pre-Agreement status quo. Because "rescission can only be invoked 'when there is lacking complete and adequate remedy at law and where the status quo may be substantially restored[,]'" *Slezak v. Stewart's Shops Corp.*, 20 N.Y.S.3d 704, 705 (N.Y. App. Div. 2015) (quoting *Rudman v. Cowles Commc'ns*, 280 N.E.2d 867, 874 (N.Y. 1972)), Defendants are correct that at some point Plaintiffs must elect between damages and rescission with the latter imposing additional burdens as conditions precedent to equitable relief.

At the pleading stage, a party is entitled to plead in the alternative, *see* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"), and is not required to elect between legal and equitable relief. *See Gold v. 29-15 Queens Plaza Realty, LLC*, 841 N.Y.S.2d 668, 669 (N.Y. App. Div. 2007) ("plaintiffs [are] entitled to plead alternative and inconsistent causes of action and to seek alternative forms of relief.") (citing CPLR § 3017 ("Relief in the alternative or of several different types may be demanded.")); *see also Prudential Oil Corp. v. Phillips Petroleum Co.*, 418 F. Supp. 254, 257 (S.D.N.Y. 1975) ("The mere availability of, and request for more than one remedy, does not satisfy the requirement of inconsistent theories, for the remedies may be consistent or cumulative."). Here, pleading in the alternative is proper.

For the reasons stated above, Defendants' motion to strike Plaintiffs' request for equitable relief is DENIED WITHOUT PREJUDICE.

**H.     Whether Plaintiffs Have Adequately Alleged Breach of Contract.**

Under New York law, a breach of contract action may only be maintained against a party to the contract. *See Pac. Carlton Dev. Corp. v. 752 Pac., LLC*, 878 N.Y.S.2d 421, 422 (N.Y. App. Div. 2009) (affirming dismissal of a breach contract claim where Defendant "was not a party to the contract alleged to have been breached."). Because Defendants Dibble, Reed, Alexson, Connelly, and Alta are not parties to the Agreement the court DISMISSES Count IV as to each of them.

Defendants seek dismissal of the breach of contract claims against the remaining Defendants AEP, Zovy, Zovy Management, and Zovy Incentive because the contested issues are subject to a binding arbitration provision. Sections 2.4.3.3 of the Agreement requires that

> any amounts remaining in dispute [as to the earn-out provision] shall be submitted for resolution to an independent accountant approved by each of the Member Representative and Purchaser . . . who, acting as an expert and not arbitrator, shall resolve the Disputed Amounts only and make any adjustments to the Earn Out Consideration amount.

(Doc. 1-1 at 42.)

Federal common law determines the definition of "arbitration" under the Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"). *See Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 144 (2d Cir. 2013) (holding that "the meaning of 'arbitration' under the [FAA] is governed by federal common law—not state law."). "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). If the court determines that the parties intended to commit a dispute to arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 831 (internal quotation marks and citation omitted).

Courts distinguish between "broad" arbitration clauses and "narrow" ones. *See id.* at 832. Where a clause is broad, courts should "order arbitration and any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator." *Id.* Where a clause is narrow, "a court considering the appropriate range of arbitrable issues must consider whether the question [at issue] is on its face within the purview of the clause." *Id.* (internal quotation marks and citation omitted).

Sections 2.4.3.3 and 2.5.3 of the Agreement are narrowly focused only on the resolution of disputed values related to the earn-out provision. *See McDonnell Douglas*, 858 F.2d at 832 (explaining that broad arbitration clauses use words like "any and all disputes"). They provide that the independent accountant acts "as an expert and not arbitrator." (Doc. 1-1 at 42.) This restrictive language is coupled with a choice of law[3]

---

[3] Section 9.7 of the Agreement provides that the Agreement "shall be governed by and construed in accordance with the laws of the State of New York[.]" (Doc. 1-1 at 62) (emphasis omitted).

17

and forum selection clause[4] set forth in the Agreement which would be meaningless if the Agreement contemplated that all disputed issues would be resolved by arbitration. *See Patsis v. Nicolia*, 992 N.Y.S.2d 349, 351 (N.Y. App. Div. 2014) (rejecting contract interpretation that "improperly renders its terms meaningless"). The Agreement thus reflects the parties' intent that only disputes regarding the value of the earn-out provisions or Zovy's present book value will be subject to resolution by the independent accountant.

Because Plaintiffs' breach of contract claims are grounded in the Agreement's representations and warranties, and not Zovy's present value or the value of the earn-out provisions, those claims are not subject to the independent accountant provision. The court therefore DENIES Defendants' motion to dismiss Plaintiffs' breach of contract claims and declines to order arbitration.

---

[4] Section 9.7 also states that "[e]ach of the parties hereby unconditionally and irrevocably waives the right to a trial by jury in any action, suit or proceeding arising out of or relating to this Agreement," and that "[e]ach of the parties unconditionally and irrevocably consents to the exclusive jurisdiction of the courts of the State of New York located in the County of Erie and the Federal District Court for the Western District of New York located in the City of Buffalo with respect to any suit, action or proceeding arising out of" the Agreement. *Id.* at 63 (emphasis omitted).

## CONCLUSION

For the foregoing reasons Defendants' motion to dismiss Counts I, II, and III as duplicative of Count IV is DENIED; Defendants' motion to dismiss Counts I, II, and III under Fed. R. Civ. P. 9(b) is DENIED; Defendants' motion to dismiss Counts I and II for failure to plead reliance is DENIED; Defendants' motion to dismiss Count III is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6) for failure to allege a special relationship and Plaintiffs are GRANTED leave to amend; Defendants' motion to strike Plaintiffs' request for equitable relief is DENIED; Defendants' motion to dismiss Count IV against Defendants Dibble, Reed, Alexson, Connelly, and Alta is GRANTED under Fed. R. Civ. P. 12(b)(6) for failure to state a claim against non-signatories to the Agreement; and Defendants' motion to dismiss Count IV against Defendants AEP RSD, Zovy Management, and Zovy Incentive under Fed. R. Civ. P. 12(b)(6) is DENIED.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 19th day of January, 2018.

Christina Reiss, District Judge
United States District Court