---------------------------------------------------------------- x

| | |
|---|---|
| CAPAX DISCOVERY, INC., WALKER GLOBAL SOLUTIONS NAPLES, INC., JOHN BAIOCCO, WYNN HOLDINGS, LLC, THOMSON FEDERAL SOLUTIONS, LLC, ANTHONY J. RAGUSA a/k/a TONY WALKER, : : : : : | Civil Action No. 17-CV-00500 |

Plaintiffs/Counterclaim Defendants, :

-against- :

AEP RSD INVESTORS, LLC, ZOVY MANAGEMENT LLC, ZOVY INCENTIVE LLC, ALTA EQUITY PARTNERS I MANAGERS, LLC, JESSICA REED, TIMOTHY DIBBLE, TIMOTHY ALEXSON, GRACE CONNELLY, :

Defendants/Counterclaim Plaintiffs. :

---------------------------------------------------------------- x

## DECLARATION OF BRIAN J. WHEELIN IN SUPPORT OF COUNTERCLAIM PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Brian J. Wheelin, declares as follows pursuant to 28 U.S.C § 1746:

1. I am an attorney duly licensed to practice in the State of New York and the United States District Court for the Western District of New York, and I am a partner at Robinson & Cole LLP, attorneys for the defendants and counterclaim plaintiffs in the above captioned action.

2. I submit this Declaration in support of Counterclaim Plaintiffs' AEP RSD Investors, LLC, Zovy Management, LLC and Zovy Incentive LLC ("Counterclaim Plaintiffs") motion to recover legal fees and costs against Plaintiff Capax Discovery. Inc. ("Capax") pursuant to Section 8.3.2 of the Equity Purchase Agreement ("the EPA") and Federal Rule of Civil Procedure 54. This Declaration is based on my personal knowledge and based upon reviewing client files.

3.      I graduated from Quinnipiac University School of Law in 2004.  I was admitted to practice law in the State of Connecticut in 2004 and the State of New York in 2005. Since 2011, I have worked at the law firm of Robinson & Cole LLP, an AmLaw 200 law firm established over 175 years ago.  One of its primary focuses is in the area of business litigation, a group that currently has over 40 lawyers.  I started as an associate and became partner in 2017.  I am a trial lawyer who has tried more than 15 jury/bench trials and arbitrations in addition to numerous evidentiary hearings.  I am also the firm's e-discovery partner.

4.      Throughout the course of this litigation, I maintained contemporaneous time records of my services rendered on behalf of Counterclaim Plaintiffs.  I entered billing information often daily or within days of the work being performed.

5.      Attached hereto as **Exhibit A** is a listing of billing entries that are being sought as part of Counterclaim Plaintiffs' motion.   These billing entries were taken from the firm's time records, which were made contemporaneously with the rendering of legal services.  A listing of each biller with total hours spent is set forth at the end of the exhibit.

6.      Attached hereto as **Exhibit B** is a listing of disbursements that are being sought as part of Counterclaim Plaintiffs' motion. These disbursements are primarily related to the need for an e-discovery vendor, depositions, the hiring of a rebuttal expert given Capax's disclosure of an expert and trial expenses.

7.      I hereby certify and represent to this Court that all of the billing entries and disbursements by my firm as set forth in Exhibits A and B are true and accurate, and were incurred for the periods of time set forth in the exhibits.

8.      Robinson & Cole LLP has billed and been paid all billing entries and disbursements reflected on Exhibits A and B, respectively, from the inception of this matter through June 2021.  August and September 2021 time has yet to be billed.  July 2021 time was billed in mid-August and we are awaiting payment.

9.      The billing entries reflect the work of only three attorneys, Joseph Clasen, Sandra Lautier and myself.   I refer the Court to the Declaration of Joseph Clasen as to his background and experience.  Attorney Sandra Lautier is a senior associate at Robinson & Cole LLP having practiced law since 2014.  She has personally handled commercial litigations in multiple jurisdictions throughout the Northeast.  Other attorneys performed a minimal amount of work on this case and such hours are not being pursued in this motion.  Other billers are legal assistants. Albina Yaikbaeva is my paralegal who assisted with various tasks throughout the case primarily trial preparation.  Adam Anderson, Jeffrey Hardisty and Joseph Lopes are electronic discovery paralegals who assisted with managing the Relativity database that housed the discovery productions in this case.

10.      As reflected in the billing entries, attorney Lautier served as the "day-to-day" associate on this litigation at its inception taking primary responsibility for the motion to dismiss (including arguing the motion) and the initial stages of discovery.  I provided some assistance during this time.  In the summer of 2019, attorney Lautier went on a six-month maternity leave. Since then, I took the lead on finishing discovery, moving for summary judgment and ultimately trying the case.  Attorney Clasen served as lead counsel from the outset of the litigation advising Counterclaim Plaintiffs on various strategic decisions and supervising the work of others.

11.     My current standard hourly rate is $660, which I bill to some other clients in similar type matters.  I billed my clients in this case a discounted rate of $445 - $460.   The rate being sought for attorney Lautier's time ($295-320) is also discounted from her current standard rate ($375).

`       12.     Discovery on Capax's eight fraud claims was extremely time intensive given their complexity and decisions made by Capax during discovery.  Among the complexities of this case, the following analyses needed to be performed:

- Determining the parties' intent and discussions as to whether a contract Zovy had with Chicago Bridge & Iron ("CB&I") was an annual recurring contract or for a one-time conversion project (paragraph 36(a) of Complaint);

- Assessing whether certain alleged costs incurred by Zovy post-acquisition relative to the CB&I contract were estimated and disclosed prior to closing (paragraph 40(e) of Complaint);

- Analyzing what hardware Zovy purchased for the Veterans Administration contract and what hardware was actually required to maintain the business (versus attempting to grow the relationship) (paragraph 36(b) of Complaint);

- Figuring out what licenses VA was using for its contract with Zovy and what Capax knew about it pre-acquisition (paragraph 36(c) of Complaint);

- Analyzing whether the gross fixed asset balance of Zovy's 2015 Audited Financial Statements accurately reflected the amount of computer hardware it owned (paragraph 40(a) of Complaint);

- Determining whether such audited financials warranted an assigned value of $500,000 for "Developed Technology" (paragraph 40(b) of Complaint); and

- Assessing whether certain invoices were properly accounts receivable (paragraphs 40(c-d) of Complaint.

13.     In response to Counterclaim Plaintiffs' document request, Capax ultimately elected on a document dump of over 25,000 documents.  None of the documents were bates

4

stamped and no real relevancy review seemed to be performed as many of the documents had absolutely nothing to do with the issues in the case.

14. This required significant attorney time in culling through the productions. This work was extremely fruitful as, among other things, Counterclaim Plaintiffs learned of Capax's efforts to "mess with Alta" to manipulate the earnout calculation and obtained key documents needed to defeat Capax's claims including Mr. Ragusa admitting that Capax performed no due diligence prior to closing.

15. Counterclaim Plaintiffs made a production of approximately 7,000 documents.

16. The Counterclaim Plaintiffs' subpoenaed Thundercat, the contract administrator for the VA contract, to primarily determine the extent of payments made relative to the earn out calculation. Thundercat produced an approximately 2,700 additional documents and provided a spreadsheet of payments made under the VA contract that formed the basis of the earnout.

17. There were nine fact depositions taken in the case. I was the only attorney who handled all depositions. Capax took the depositions of the four individuals it sued, all of which took place in Boston, Massachusetts. Counterclaim Plaintiffs deposed four representatives of Capax who insisted on being deposed in Naples, Florida. The parties also deposed non-party Christopher Grossman, Zovy's former CEO, in Virginia on two separate days.

18. Capax disclosed a damages expert, Kelly Besaw which required Counterclaim Plaintiffs to retain a rebuttal expert. Both experts were deposed. Ultimately and despite all of the time spent of expert discovery, Capax elected to not call Mr. Besaw as a witness.

19.     The parties also attempted mediation on two separate occasions.  The mediations ultimately went nowhere as Capax demanded that it be paid in any settlement.

Dated: September 14, 2021


_____
Brian J. Wheelin