IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

CAPAX DISCOVERY, INC., WALKER
GLOBAL SOLUTIONS NAPLES, INC., JOHN
BAIOCCO, WYNN HOLDINGS, LLC,
THOMSON FEDERAL SOLUTIONS, LLC,             :   Civil Action No.  17-CV-00500
ANTHONY J. RAGUSA a/k/a TONY WALKER,

    Plaintiffs/Counterclaim Defendants,

    -against-

AEP RSD INVESTORS, LLC, ZOVY
MANAGEMENT LLC, ZOVY INCENTIVE LLC,
ALTA EQUITY PARTNERS I MANAGERS,
LLC, JESSICA REED, TIMOTHY DIBBLE,
TIMOTHY ALEXSON, GRACE CONNELLY,

    Defendants/Counterclaim Plaintiffs.

---------------------------------------------------------------- x

**COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS**

Joseph L. Clasen, Esq.
Brian J. Wheelin, Esq.
Sandra Marin Lautier, Esq.
ROBINSON & COLE LLP
Chrysler East Building
666 Third Avenue – 20th Floor
New York, NY 10017
Tel. No.:  (212) 451-2900
Fax No.:  (212) 451-2999
E-mail:  jclasen@rc.com
       bwheelin@rc.com
       slautier@rc.com

22782081-v3

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

III.  ARGUMENT ...................................................................................................... 3

     A.    COUNTERCLAIM PLAINTIFFS ARE ENTITLED TO AN AWARD OF
          ATTORNEYS' FEES AND COSTS ................................................................. 3

     B.    COUNTERCLAIM PLAINTIFFS' REQUEST FOR FEES IS
          REASONABLE AND APPROPRIATE................................................................ 4

          (i)    The Hourly Rates Charged and Paid by Counterclaim Plaintiffs are
               Reasonable ...................................................................................... 4

               (a)    Counsel Has Been Paid the Requested Rates in This Case ........... 6

               (b)    The Rates Sought Are Discounted from Standard Rates
                      Charged to Clients.................................................................... 6

               (c)    Counsel's Experience Warrants the Requested Rates ................... 7

               (d)    The Requested Rates Are Consistent With Rates Awarded
                      in the Southern District of New York ........................................... 8

               (e)    Capax Forced This Case to Be Complex ..................................... 9

               (f)    The Results Obtained Warrant the Requested Rates ................... 10

              (ii)   The Hours Expended Were Necessary and Appropriate For This
               Complex Litigation ................................................................................ 11

                (a)    Capax's Claims Involved Fact-Intensive and Complex
                      Discovery ................................................................................ 11

               (b)    Counsel Avoided Duplicative Work........................................... 12

               (c)    Capax Could Have Avoided Much of Requested Fees If It
                      Did Not Elect to Pursue Frivolous Claims.................................. 12

               (iii)  Counterclaims Plaintiffs Are Entitled to Costs and Legal Assistant
               Fees .................................................................................................. 14

IV.   CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdell v. City of New York*,
No. 05-CV-8453 RJS, 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015)..........................................8

*Adorno v. Port Auth. of New York & New Jersey*,
685 F. Supp. 2d 507 (S.D.N.Y. 2010)....................................................................................8

*Alicea v. City of New York*,
272 F. Supp. 3d 603 (S.D.N.Y. 2017).....................................................................................8

*Anthony v. Franklin First Fin., Ltd.*,
844 F. Supp. 2d 504 (S.D.N.Y. 2012).....................................................................................5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008)..................................................................................4, 5, 6, 10

*Barbour v. City of White Plains*,
788 F. Supp. 2d 216 (S.D.N.Y. 2011), aff'd, 700 F.3d 631 (2d Cir. 2012)..............................8

*Coakley v. Webb*,
No. 14 CIV. 8438 (ER), 2016 WL 1047079 (S.D.N.Y. Mar. 10, 2016)...................................8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................................................................4

*Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*,
291 F. Supp. 3d 554 (S.D.N.Y. 2018)....................................................................................8

*Homeaway.com, Inc. v. City of New York*,
2021 WL 791232 (S.D.N.Y. Mar. 1, 2021) .............................................................................8

*Imbeault v. Rick's Cabaret Int'l Inc.*,
2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009).........................................................................4

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 715 (5th Cir. 1974) .............................................................................................6, 10

*LCS Grp. LLC v. Shire LLC*,
383 F. Supp. 3d 274 (S.D.N.Y. 2019)....................................................................................8

*Long v. City of New York*,
09-CV-6099, Doc. 39 (S.D.N.Y. 2010) ...................................................................................8

*Millea v. Metro–N. R.R. Co.*,
   658 F.3d 154 (2d Cir.2011)................................................................................................4

*Polk v. New York State Dep't of Corr. Serv's.*,
   722 F.2d 23 (2d Cir. 1983)................................................................................................5

*Rozell v. Ross-Holst*,
   576 F. Supp. 2d 527 (S.D.N.Y. 2008)............................................................................5, 8

*Ruiz v. Maidenbaum & Assocs. P.L.L.C.*,
   2013 WL 3957742 (S.D.N.Y. Aug 1, 2013) .....................................................................4

*Salama v. City of New York*,
   2015 WL 4111873 (S.D.N.Y. July 8, 2015) .....................................................................8

*U.S. Football League v. Nat'l Football League*,
   887 F.2d 408 (2d Cir. 1989)............................................................................................14

## Other Authorities

Federal Rule of Civil Procedure 54 ...........................................................................................1

As provided for in the Findings of Fact, Conclusions of Law and Entry of Judgment entered on September 1, 2021 (Doc. No. 134) (the "Entry of Judgment"), Counterclaim Plaintiffs AEP RSD Investors, LLC, Zovy Management, LLC and Zovy Incentive LLC (hereafter "Counterclaim Plaintiffs") seek attorneys' fees pursuant to Section 8.3.2 of the Equity Purchase Agreement ("the EPA") and Federal Rule of Civil Procedure 54.   Counterclaim Plaintiffs seek an award of attorneys' fees in the amount of $834,294.12 and costs in the amount of $81,015.75, as supported by the attached declarations and exhibits thereto.

## I.  INTRODUCTION

The *entirety* of the attorneys' fees and costs sought in this motion are of Capax's own making.  Despite Zovy being enormously profitable for years post-acquisition, Capax refused to pay the Counterclaim Plaintiffs their rightful earn out compensation under the EPA, which this Court has now awarded in full.

Instead, Capax commenced this litigation with a verified complaint claiming (1) it wanted the EPA rescinded and/or (2) at least ten million in damages as a result of eight alleged fraudulent misrepresentations.  It sued a variety of entities and individuals, including a part-time accountant.  From the outset, Capax claimed to this Court that it had no obligation to pay the earn out as a result of this supposed fraud.

Capax's claims forced the Counterclaim Plaintiffs to spend over four years litigating this case and pay the fees and costs sought in this motion.  After discovery involving over 50,000 documents and 9 depositions, Counterclaim Plaintiffs moved for summary judgment.  In response, Capax finally admitted that it never wanted a rescission of the EPA claiming it was a mistake by one of its five lawyers.  Nor did it even attempt to avoid summary judgment as to four of its eight fraud claims.

This Court granted summary judgment as to all of Capax's claims but permitted Capax to argue at trial that it should be excused from paying the earn out as a result of one of the alleged misrepresentations.  At trial and to what this Court characterized as "wholesale failure of proof" (Entry of Judgment at p. 16), Capax did not even submit any admissible evidence of the supposed alleged fraud beyond the rantings of its principal, Anthony Ragusa.  Capax and Ragusa wasted even more time with an appeal that was denied via summary order.

The only conclusion that can now be drawn is Capax's claims were frivolous and without merit from the moment they were brought.  But the complexity of the allegations forced Counterclaim Plaintiffs' to expend costs that were completely unnecessary to prove a negative.  As such, Counterclaim Plaintiffs' respectfully request that this Court award them their requested attorneys' fees and costs, incurred and paid, in full.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2016, Counterclaim Plaintiffs entered into the EPA with Capax whereby Capax acquired Zovy on the date of said Agreement (the "Acquisition").  Trial Exhibit 1.  Pursuant to Sections 2.3 and 2.41 of the Agreement, Capax acquired Zovy for one dollar plus the payment of "Earn Out Consideration" calculated as fifty percent of the annual gross "VA Revenue" (as such terms are defined in the Agreement) that were received in excess of $1 million (for calendar years 2016 and 2017) and $1.5 million for (calendar years 2018, 2019, and 2020).

Zovy was very profitable for years post-acquisition.  Zovy was so successful that Ragusa valued the company between $27 million to $60 million on May 5, 2017.  Trial Exhibit 15.  Six days after Ragusa's valuation and when Capax's first earn out payment was past due, Plaintiffs commenced this litigation with a verified complaint claiming fraud and asking this Court, as its

First Cause of Action, for a rescission of the Zovy acquisition. Doc No. 1. Plaintiffs also sought over ten million in damages for alleged fraudulent and negligent misrepresentations.

Counterclaim Plaintiffs' filed a motion to dismiss. The Court partially granted the motion to dismiss as to Count III (negligent misrepresentation) and as to Count IV (breach of contract) as to the individual defendants. *See* Doc. No. 20.

After the Court adjudicated several discovery disputes (*see* Doc. Nos. 50, 52, 63, 70-74), Counterclaim Plaintiffs moved for summary judgment as to all of the Plaintiffs' claims and its entitlement to the earn out. Mr. Ragusa also moved for summary judgment as to the libel claim against him. The Court granted Counterclaim Plaintiffs' motion for summary judgment as to all of Capax's affirmative claims and denied Mr. Ragusa's summary judgment motion. Doc. No. 97.

A bench trial on the remaining claims occurred on April 19, 2021 and June 9, 2021. After post-trial briefing, the Court rendered its ruling entering judgment in favor of Counterclaim Plaintiffs in the full amount it sought as well as nominal damages for the libel claim. *See* Entry of Judgment.

### III.  ARGUMENT

A.    **COUNTERCLAIM PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS**

As this Court held in its Entry of Judgment, "[p]ursuant to Section 8.3.2 of the EPA, Capax agreed to indemnify and hold harmless the Members and their principals, directors, and others from their reasonable attorneys' fees and expenses relative to 'any breach of agreement, covenant of obligation of [Capax] contained'" in the EPA. Entry of Judgment at p. 19. This Court found that Capax breached the EPA through its failure to pay the earn out. *Id.* at p. 17.

3

Capax's contention throughout this case was that it had no obligation to pay the earn out as a result of its allegations of various misrepresentations. *See e.g.*, Capax's Opposition to Counterclaim Plaintiffs' Motion for Summary Judgment dated November 29, 2019 (Doc. No. 88) at pp. 9-10 (claiming that Counterclaim Plaintiffs were "legally barred" from pursuing the earn out as a result of Capax's alleged misrepresentation claims); Capax's Post Trial Brief dated July 19, 2021 (Doc. No. 129) at pp. 24 (claiming that Capax's payment of the earn out was "excused" as a result of the alleged misrepresentations). As such, fees and costs related to the entirely of this litigation is subject to indemnification.

**B.    COUNTERCLAIM PLAINTIFFS' REQUEST FOR FEES IS REASONABLE AND APPROPRIATE**

In the Second Circuit, the "starting point" for calculating an attorneys' fee award is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Imbeault v. Rick's Cabaret Int'l Inc.*, 2009 WL 2482134, at *1 (S.D.N.Y. Aug. 13, 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The resulting figure is the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). The "presumptively reasonable fee," in effect, becomes "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir.2011). When reviewing fee applications, a court relies on its familiarity with the case, "as well as on its experience with the parties' evidentiary submissions and arguments ." *Ruiz v. Maidenbaum & Assocs. P.L.L.C.*, 2013 WL 3957742, at * 4 (S.D.N.Y. Aug 1, 2013).

**(i)    The Hourly Rates Charged and Paid by Counterclaim Plaintiffs are Reasonable**

In setting a reasonable hourly rate, a district court should determine "what rate a paying client would be willing to pay . . . bear[ing] in mind all of the case-specific variables that [the

Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees." *Arbor Hill,* 522 F.3d at 190.  The Court assesses the reasonableness of the submitted hourly rate by "considering the prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012) (*citing Polk v. New York State Dep't of Corr. Serv's.*, 722 F.2d 23, 25 (2d Cir. 1983)). While the relevant community is presumed to be the district in which the case is litigated, the Second Circuit has held that a district court may use an "out-of-district hourly rate . . . in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. *See Arbor Hill*, 522 F.3d at 191.

In determining a reasonable rate, courts look at (1) the experience of counsel, *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008); (2) the range of rates that a party's counsel actually charge their clients, *id.* at 544; (3) evidence of rates charged in this district, *id.* at 545-46; and (4) complexity of the case.  *Id.* at 546.

The hourly rates charged by Counterclaims Plaintiffs' counsel were for attorney Joseph Clasen, $600, attorney Brian Wheelin $445-460 and attorney Sandra Lautier, $295-320. Declaration of Brian J. Wheelin in Support of Counterclaim Plaintiffs' Motion for Attorneys' Fees and Costs ("Wheelin Dec.") at Ex. A thereto.  As set forth more fully below, these hourly rates are entirely reasonable based on (1) Counterclaim Plaintiffs' counsel billed and were paid the requested rate; (2) the rates are significantly discounted from standard rates; (3) the experience and expertise of Counterclaim Plaintiffs' counsel; (4) the complexity of presenting the case as well as the substantial work necessary to counter Capax's arguments to avoid the earn out; and (5) the requests achieved.

### (a)    Counsel Has Been Paid the Requested Rates in This Case

Counterclaim Plaintiffs have paid the time incurred in this litigation at the rates sought

herein.  Wheelin Dec. at ¶ 8.   The fact that Counterclaim Plaintiffs' counsel charged, and was

paid, the requested rates is evidence that the rate is more than reasonable.  As the Second Circuit

noted:

> We think the better course—and the one most consistent with attorney's fees
> jurisprudence—is for the district court, in exercising its considerable discretion, to
> bear in mind all of the case-specific variables that we and other courts have
> identified as relevant to the reasonableness of attorney's fees in setting a
> reasonable hourly rate. The reasonable hourly rate is the rate a paying client
> would be willing to pay. In determining what rate a paying client would be
> willing to pay, the district court should consider, among others, the *Johnson*
> factors; it should also bear in mind that a reasonable, paying client wishes to
> spend the minimum necessary to litigate the case effectively. The district court
> should also consider that such an individual might be able to negotiate with his or
> her attorneys, using their desire to obtain the reputational benefits that might
> accrue from being associated with the case. The district court should then use that
> reasonable hourly rate to calculate what can properly be termed the
> "presumptively reasonable fee."

*Arbor Hill*, 522 F.3d at 191.

### (b)    The Rates Sought Are Discounted from Standard Rates Charged to Clients

The hourly rates billed and paid by Counterclaim Plaintiffs represent a 20%-45%

discount off of current standard rates charged by attorneys Clasen, Wheelin and Lautier to some

of its other clients at their firm.  *See* Declaration of Joseph L. Clasen in Support of Counterclaim

Plaintiffs' Motion for Attorneys' Fees and Costs ("Clasen Dec.") at ¶ 8 (2022 standard hourly

rate is $985); Wheelin Declaration at ¶ 11 (2022 standard hourly rate is $825 and attorney

Lautier's is $450).

6

### (c)    Counsel's Experience Warrants the Requested Rates

The law firm of Robinson & Cole LLP is an AmLaw 200 law firm established over 175 years ago.  Wheelin Dec. at ¶ 3.  One of its primary focuses is in the area of business litigation, a group that currently has over 40 lawyers.  *Id.*

Attorney Clasen has practiced law since 1980.  Clasen Dec. at ¶ 3.  Since 1989 he has practiced out of the firm's Stamford, Connecticut office and in 1997 practiced out of the firm's New York City office as well as the Connecticut office.  *Id.*  He has extensive experience in litigating a variety of complex business disputes in state and federal trial and appellate courts, as well as in arbitrations.  *Id.* at ¶ 4.   He has tried over 40 cases in federal and state courts and at least the same number of arbitrations.  *Id.*  Among his trial victories, attorney Clasen secured a favorable ruling for Gyrodyne Company of America, Inc., when the New York Court of Appeals denied the state's request to appeal a judgment awarding Gyrodyne more than $125 million in additional compensation for land the state took by eminent domain. Clasen Dec. at ¶ 5.  Attorney Clasen was the past chair of the firm's Business Litigation Group.  *Id.* at ¶ 3.

Attorney Wheelin has practiced law since 2004 out of the firm's Metro New York offices.  Wheelin Dec. at ¶ 3.   He is a trial lawyer who has tried more than 20 jury/bench trials and arbitrations in addition to numerous evidentiary hearings.  *Id*.   He is also the firm's e-discovery partner.  *Id.*   Attorney Lautier has practiced law since 2014.  She has personally handled commercial litigations in multiple jurisdictions throughout the Northeast.

Attorney Clasen served as lead counsel from the outset of the litigation advising Counterclaim Plaintiffs on various strategic decisions and supervising the work of others.  Clasen Dec. at ¶ 7.  Attorney Lautier served as the "day-to-day" associate on this litigation taking primary responsibility for the motion to dismiss (including arguing the motion) and the initial stages of discovery through the summer of 2019 when she had a six-month maternity leave.

Wheelin Dec. at ¶ 10.    As a result, attorney Wheelin took the lead on finishing discovery, moving for summary judgment and ultimately trying the case and handling the appeal.    *Id.*

#### (d)    The Requested Rates Are Consistent With Rates Awarded in the Southern District of New York

The rates sought herein have been awarded by courts in the Second Circuit to attorneys of similar experience.    Attorney Clasen's rate of $600 is in range of rates which has been found to be reasonable for attorneys with their level of experience in complex litigation in the Southern District of New York.    *See LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) ($600 hourly rate); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225-26 (S.D.N.Y. 2011), *aff'd*, 700 F.3d 631 (2d Cir. 2012) ($425-$625 hourly rate); *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 514 (S.D.N.Y. 2010), *on reconsideration in part*, No. 06 CIV. 593 (DC), 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010) ($500-$550 hourly rate); *Rozell*, 576 F. Supp. 2d at 546 ($600 hourly rate); *Coakley v. Webb*, No. 14 CIV. 8438 (ER), 2016 WL 1047079, at *4–5 (S.D.N.Y. Mar. 10, 2016) ($550 to $650 hourly rate); *Abdell v. City of New York*, No. 05-CV-8453 RJS, 2015 WL 898974, at *5 (S.D.N.Y. Mar. 2, 2015) ($650 hourly rate); *Long v. City of New York*, 09-CV-6099, Doc. 39 (S.D.N.Y. 2010) ($650 hourly rate).

Attorney Wheelin's rate of $445 to $460 is consistent or lower than that which has been found to be reasonable for attorneys with his level of experience.    *See Alicea v. City of New York,* 272 F. Supp. 3d 603, 611 (S.D.N.Y. 2017) ($500 hourly rate); *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 561 (S.D.N.Y. 2018) ($500 hourly rate); *LCS Grp. LLC v. Shire LLC,* 383 F. Supp. 3d 274, 279 (S.D.N.Y. 2019) (subsequent history omitted) ($449.50 hourly rate).

Attorney Lautier's rate of $295-$320 rate as a mid-level to senior associate is lower than rates that have been awarded by the Southern District of New York.  *See e.g., Homeaway.com, Inc. v. City of New York*, 2021 WL 791232, (S.D.N.Y. Mar. 1, 2021) (awarding $375-400) (citing Rozell, 576 F.Supp. at 546 (awarding $350 to senior associates); *Salama v. City of New York*, 2015 WL 4111873 at * 3 (S.D.N.Y. July 8, 2015) (same).

### (e)    Capax Forced This Case to Be Complex

This case did not need to be complex.  If Capax simply refused to pay the earn out, the Counterclaim Plaintiffs could have commenced litigation, determined the amount of the earn out and pursued a judgment.

But Capax decided to go on the offensive and commence a litigation with a false premise (the request for a rescission) and frivolous misrepresentation accusations that went absolutely nowhere. *See e.g.*, Entry of Judgment at p. 16 (noting a "wholesale failure of proof regarding the alleged undisclosed liability.").   And all of this, by Capax's own admissions to the Court throughout the litigation, was done to claim it did not need to pay the earn out. *See e.g*., Counterclaim Defendants' Reply to Defendants Counterclaims Set Forth in its Answer dated January 10, 2019 (Doc. No. 64), Fifth Affirmative Defense ("Defendants' counterclaims should be dismissed because Defendants are in breach of the very agreement they purport to enforce.").

 Thus, Capax's filing required Counterclaim Plaintiffs to adjudicate the eight misrepresentation claims in order to ultimately obtain their earn out compensation.  And it had to do this under a significant disadvantage as, by selling Zovy and transferring the company's servers, it did not have access to much of the relevant information needed to refute the claims.

Furthermore, the underlying alleged misrepresentations involved complex issues including:

- Determining the parties' intent and discussions as to whether a contract Zovy had with Chicago Bridge & Iron ("CB&I") was an annual recurring contract or for a one-time conversion project (paragraph 36(a) of Complaint);

- Assessing whether certain alleged costs incurred by Zovy post-acquisition relative to the CB&I contract were estimated and disclosed prior to closing (paragraph 40(e) of Complaint);

- Analyzing what hardware Zovy purchased for the Veterans Administration contract and what hardware was actually required to maintain the business (versus attempting to grow the relationship) (paragraph 36(b) of Complaint);

- Figuring out what licenses VA was using for its contract with Zovy and what Capax knew about it pre-acquisition (paragraph 36(c) of Complaint);

- Analyzing whether the gross fixed asset balance of Zovy's 2015 Audited Financial Statements accurately reflected the amount of computer hardware it owned (paragraph 40(a) of Complaint);

- Determining whether such audited financials warranted an assigned value of $500,000 for "Developed Technology" (paragraph 40(b) of Complaint); and

- Assessing whether certain invoices were properly accounts receivable (paragraphs 40(c-d) of Complaint.

See Wheelin Dec. at ¶ 12. As described more fully below, this universe of issues required extensive factual discovery. *See infra* Section III(B)(ii)(a).

### (f)    The Results Obtained Warrant the Requested Rates

As the Second Circuit noted in *Arbor Hill*, courts should consider all of the factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 715 (5th Cir. 1974) in assessing fees, one such factor being the extent of results obtained. *Arbor Hill*, 522 F.3d at 186 and fn. 3. Here, Counterclaim Plaintiffs achieved a total victory. At the outset of the case, Capax's complaint had obvious deficiencies that warranted a motion to dismiss. Counterclaim Plaintiffs prevailed in part on the motion including a dismissal of the negligent misrepresentation claim and having non-contractual defendants dismissed from the breach of contract claim. *See* Doc. No. 20.

10

Counterclaim Plaintiffs obtained a dismissal of all of Capax's affirmative claims on summary judgment. *See* Doc. No. 97.    After trial, this Court award Counterclaim Plaintiffs *100% of the amount sought* relative to their earn out claim.  Entry of Judgment  at p. 19 Damages were also awarded on the libel claim. *Id.* at p. 20.    Counterclaims Plaintiffs defeated Capax and Ragusa's appeal.

**(ii)    The Hours Expended Were Necessary and Appropriate For This Complex Litigation**

**(a)    Capax's Claims Involved Fact-Intensive and Complex Discovery**

As set forth above, the alleged misrepresentations involved highly fact-intensive discovery that largely involved documents possessed by Zovy and therefore ultimately controlled by Capax. *See* Wheelin Dec. at ¶¶ 13-19.

In response to Counterclaim Plaintiffs' document request, Capax ultimately elected on a document dump of over 25,000 documents.  None of the documents were bates stamped and no real relevancy review was performed as many of the documents had absolutely nothing to do with the issues in the case.  This requested significant attorney time in culling through the productions.  This work was extremely fruitful as, among other things, Counterclaim Plaintiffs learned of Capax's efforts to "mess with Alta" to manipulate the earn out calculation and obtained key documents needed to defeat Capax's claims such as Mr. Ragusa admitting internally that no due diligence was performed prior to acquisition.  Counterclaim Plaintiffs also made a production of approximately 7,000 documents.

Additionally, with a complete lack of trust between the parties, the Counterclaim Plaintiffs' subpoenaed Thundercat, the contract administrator for the VA contract, to primarily determine the extent of payments made relative to the earn out calculation.  Thundercat produced

11

an approximately 2,700 additional documents and provided a spreadsheet of payments made under the VA contract that formed the basis of the earn out.

There were nine fact depositions taken in the case.  Capax took the depositions of the four individuals it sued, all of which took place in Boston, Massachusetts.  Counterclaim Plaintiffs deposed four representatives of Capax who insisted on being deposed in Naples, Florida.  The parties also deposed non-party Christopher Grossman, Zovy's former CEO, in Virginia on two separate days.

Capax disclosed a damages expert, Kelly Besaw which required Counterclaim Plaintiffs to retain a rebuttal expert.  Both experts were deposed.  Ultimately and despite all of the time spent of expert discovery, Capax elected to not call Mr. Besaw as a witness.

Finally, the parties attempted mediation on two separate occasions.  The mediations ultimately went nowhere as Capax demanded that it be paid in any settlement.

### (b)    Counsel Avoided Duplicative Work

Despite this litigation spanning over four years, this motion only seeks recovery for the time spent by three attorneys.  *See* Wheelin Dec. at Ex. A thereto.  For the first two years of the case, almost all of the "day-to-day" tasks were performed by attorney Lautier and since then attorney Wheelin, with attorney Clasen overseeing and advising accordingly.  There is virtually no duplication of litigation efforts amongst tasks.  All depositions and even the trial were attended by only attorney Wheelin.    Wheelin Dec. at ¶ 17.

### (c)    Capax Could Have Avoided Much of Requested Fees If It Did Not Elect to Pursue Frivolous Claims

In assessing the hours performed by counsel, it is important for this Court to consider what actually transpired at the end of the day with respect to Capax's claims in this case. Plaintiffs commenced this litigation with a verified complaint asking this Court, as its First

Cause of Action, for a rescission of the Zovy acquisition. Plaintiffs admitted in discovery that they have never wanted a rescission. *See* Statement of Material Facts and Capax's Response Thereto (Docket Nos. 81-2 and 88-2 at ¶¶ 27-30. This is because a rescission would have required Capax to pay back the millions in profits/distributions Plaintiffs earned from Zovy. Plaintiffs claimed it was a "mistake" by his first of now four lawyers on this case even though Plaintiffs verified the allegation not once, but twice. But it never even withdrew the claim until responding to Capax's summary judgment motion. Not pursuing this claim by "mistake" would have reduced Counterclaim Plaintiffs' fees.

Capax simply abandoned four of the eight alleged misrepresentations in their operative claim by offering zero argument in response to Defendants seeking summary judgment. Complaint at ¶ 36(b)); the EAS claim (¶36(c)), the Developed Technology claim (¶ 40(b)) or the UT Health claim (¶ 40(d)). While granting summary judgment on the four remaining alleged misrepresentations, this Court still permitted Capax to argue that there should be a reduction or elimination of the earn out by virtue of the CB&I/HP cost issue. Doc No. 97 at pp. 26-30.

Capax woefully failed to submit any admissible evidence on this issue. It did not even testify to (let alone submit documents in support) of the alleged amount of HP costs it asserted let alone any proof that Counterclaim Plaintiffs' misrepresented the scope of the costs. See Entry of Judgment at p. 16 ("wholesale failure of proof"). As opposed to Mr. Ragusa rantings of where this evidence was supposedly located, Jessica Reed offered a detailed explanation of how the estimated HP costs were disclosed pre-closing. Notwithstanding the "wholesale failure of proof," Capax and Ragusa elected to appeal which continued to increase Counterclaim Plaintiffs' costs.

13

In short, Capax's claims should never have existed in the first place. It was designed as an attempted (but failed) effort to force Counterclaim Plaintiffs to give up on the earn out and allow Capax to have Zovy for free. And now that it failed, Counterclaim Plaintiffs respectfully request that it be awarded its fees in full.[1]

### (iii)    Counterclaims Plaintiffs Are Entitled to Costs and Legal Assistant Fees

Section 8.3.2 of the EPA also includes an indemnity as to Counterclaim Plaintiffs' reasonable expenses. Entry of Judgment at p. 19. Attorneys' fees awards include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989). Counterclaim Plaintiffs' costs that were included in contemporaneous billing records are listed in summary fashion. Wheelin Declaration at Ex. B. Costs primarily consisted of depositions expenditures, retaining rebuttal expert and trial expenses. *Id.* at ¶ 6.

Counterclaim Plaintiffs also seek the recovery of legal assistant time. Albina Yaikbaeva is attorney Wheelin's paralegal who assisted with various tasks throughout the case primarily trial preparation. Adam Anderson, Jeffrey Hardisty and Joseph Lopes are electronic discovery paralegals who assisted with managing the Relativity database that housed the discovery productions in this case. Wheelin Dec. at ¶ 9.

---

[1] As detailed in the Wheelin Declaration, Counterclaim Plaintiffs have also engaged in discovery relative to the enforcement of the judgment. Capax produced an alleged agreement purportedly executed at or around the time Capax acquired Zovy in 2016 whereby Capax transferred Zovy to certain assignees (John Baiocco, Walker Global Solutions, Wynn Holdings and Thomson Federal Solutions) for no monetary compensation beyond a purported promise to pay VA Earnout funds beginning in 2021. Wheelin Declaration at ¶¶ 21-23; Ex. D thereto. Even assuming the agreement is authentic (which Counterclaim Plaintiffs highly doubt), there appears to be no question that Capax has no intention of agreeing to pay what it promised which will result in further litigation. Counterclaim Plaintiffs respectfully request that Capax's efforts to avoid payment beginning with the very commencement of this litigation should factor into how this Court adjudicates their motion for fees and costs.

## IV.  CONCLUSION

Counterclaim Plaintiffs respectfully request that their motion be granted, and they are

awarded attorneys' fees in the amount of $834,294.12 and costs in the amount of $81,015.75.

Dated: August 10, 2022                     Respectfully Submitted,

By:     */s/ Brian J. Wheelin*
        Joseph L. Clasen, Esq.
        Brian J. Wheelin, Esq.
        Sandra Marin Lautier
        ROBINSON & COLE LLP
        Chrysler East Building
        666 Third Avenue – 20th Floor
        New York, NY 10017
        Tel. No.:  (212) 451-2900
        Fax No.:  (212) 451-2999
        E-mail:  jclasen@rc.com
                 bwheelin@rc.com
                 slautier@rc.com

        *Attorneys for Counterclaim Plaintiffs AEP*
        *RSD Investors, LLC, Zovy Management LLC*
        *and Zovy Incentive LLC,*

15

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 10th day of August 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Brian J. Wheelin*
Brian J. Wheelin

16