UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

CAPAX DISCOVERY, INC., WALKER GLOBAL SOLUTIONS NAPLES, INC., JOHN BAIOCCO, WYNN HOLDINGS, LLC, THOMSON FEDERAL SOLUTIONS, LLC,

Plaintiffs,

v.

AEP RSD INVESTORS, LLC, ZOVY MANAGEMENT LLC, ZOVY INCENTIVE LLC, ALTA EQUITY PARTNERS I MANAGERS, LLC, JESSICA REED, TIMOTHY DIBBLE, TIMOTHY ALEXSON, and GRACE CONNELLY,

Defendants/Counterclaim Plaintiffs,

v.

CAPAX DISCOVERY, INC. and ANTHONY J. RAGUSA a/k/a TONY WALKER,

Counterclaim Defendants.

Case No. 1:17-cv-00500-CCR

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**
(Doc. 154)

Pending before the court is Defendants AEP RSD Investors, LLC, Zovy Management LLC, and Zovy Incentive LLC's (collectively, "Defendants") motion for an award of attorneys' fees and costs under Section 8.3.2 of the parties' Equity Purchase Agreement ("the EPA") and Federal Rule of Civil Procedure 54, filed on August 10, 2022. On September 7, 2022, Plaintiffs opposed the motion. Defendants replied on September 13, 2022, at which point the court took this motion under advisement.

Defendants are represented by Joseph L. Clasen, Esq., Brian J. Wheelin, Esq., Sandra Marin Lautier, Esq., and Patrick W. Begos, Esq. Plaintiffs are represented by Charles C. Ritter, Jr. Esq., Robert C. Carbone, Esq., and Robert E. Gallagher, Jr., Esq.

## I. Factual and Procedural Background.

This case arises out of Plaintiff Capax Discovery, Inc.'s ("Capax") acquisition of Zovy LLC ("Zovy") in September of 2016. In their Amended Verified Complaint, Plaintiffs Capax, Walker Global Solutions Naples, Inc., John Baiocco, Wynn Holdings, LLC, and Thomson Federal Solutions, LLC (collectively, "Plaintiffs") sought equitable rescission of the September 23, 2016 EPA between the parties and asserted claims of fraudulent inducement, negligent misrepresentation, and breach of contract.

Defendants AEP RSD Investors, LLC ("AEP"), Zovy Management LLC ("Zovy Management"), Zovy Incentive LLC ("Zovy Incentive"), Alta Equity Partners I Managers, LLC ("Alta"), Timothy Dibble, Jessica Reed, Timothy Alexson, and Grace Connelly counterclaimed for breach of contract against Capax and libel against Capax and Anthony Ragusa ("Mr. Ragusa"), one of Capax's principals.

In response to parties' cross-motions for summary judgment, on September 30, 2020, the court issued an opinion and order granting in part and denying in part Defendants' motion for summary judgment and denying Plaintiffs' cross-motion for partial summary judgment (Doc. 97) (the "Summary Judgment Decision") in which it granted summary judgment in Defendants' favor on each of Plaintiffs' claims. The court held that Plaintiffs were liable for breach of the EPA because they failed to pay Defendants thereunder, but reserved judgment on the issue of whether Plaintiffs were excused from performance due to an alleged material misrepresentation by Defendants. The court also reserved for trial the amount of Earn Out Consideration, if any, owed by Plaintiffs to Defendants, and adjudication of Defendants' libel counterclaim against Capax and Mr. Ragusa.

On April 19 and June 10, 2021, the court held a bench trial via videoconference with the parties' consent at which Michael McGrath, Thomas Thomson, Anthony Ragusa, Jessica Reed, Timothy Dibble, and John Baiocco appeared and testified.

On September 1, 2021, the court entered judgment in favor of Defendants on their breach of contract and libel counterclaims. (Doc. 134.) The court found that Capax was not entitled to be excused from performance under the EPA due to alleged material misrepresentations by Defendants, that Capax breached the EPA when it intentionally delayed receipt of payments in bad faith to reduce the amount of Earn Out Consideration owed to Defendants, and that under Section 8.3.2 of the EPA, "Capax agreed to indemnify and hold harmless the Members and their principals, directors, officers, and others from their reasonable attorneys' fees and expenses relative to 'any breach of any agreement, covenant or obligation of [Capax] contained' in the EPA." *Capax Discovery, Inc. v. AEP RSD Investors, LLC*, 2021 WL 3909857, at *9–11 (W.D.N.Y. Sept. 1, 2021).

Plaintiffs appealed, arguing that the court erred in dismissing their breach of contract and fraudulent inducement claims on summary judgment and ruling in favor of Defendants on their breach of contract and libel counterclaims following the bench trial. On July 22, 2022, the Second Circuit affirmed. *See Baiocco v. AEP RSD Investors, LLC*, 2022 WL 2902081 (2d Cir. July 22, 2022).

Defendants seek attorneys' fees in the amount of $834,294.12 and costs in the amount of $81,105.75, supported by declarations and exhibits which set forth billing records and disbursements. (Docs. 156 and 157.) Plaintiffs, in opposition, ask the court to deny Defendants' request for attorneys' fees in full or, at minimum, subject Defendants' request to a fifty percent reduction on the basis that the requested figure includes time spent litigating the libel counterclaim against Mr. Ragusa, which is not covered by the EPA's indemnification clause. Plaintiffs further assert that Defendants have failed to maintain contemporaneous time records sufficient to determine this issue and that the amount Defendants seek is unreasonable and unsubstantiated because their attorneys' time records are vague.

## II. Conclusions of Law and Analysis.

### A. Whether the EPA's Indemnification Provision Allows Defendants to Recover Attorneys' Fees Incurred Litigating the Libel Counterclaim.

Plaintiffs ask the court to deny Defendants' request for attorneys' fees because the requested amount includes time spent litigating the libel counterclaim against Mr. Ragusa, who Plaintiffs assert is not a party to the EPA and is thus not covered by the EPA's indemnification clause. Plaintiffs cite to *Tudisco v. Duerr*, 933 N.Y.S.2d 140 (N.Y. App. Div. 2011) for support. There, defendants who prevailed at trial on the plaintiff's affirmative conversion claim and on their own counterclaim relating to fees owed under a promissory note were only entitled to attorneys' fees incurred in enforcing their rights under the promissory note and not in defending against the parties' conversion claim. "A contract assuming the obligation to indemnify with respect to attorneys' fees must be strictly construed to avoid reading into it a duty that the parties did not intend to be assumed." *Id.* at 144 (quoting *Zanghi v. Laborers' Int'l. Union of N. Am., AFL-CIO*, 801 N.Y.S.2d 646, 648 (N.Y. App. Div. 2005)). Where the promissory note in *Tudisco* provided that defendants were entitled to attorneys' fees related to claims or counterclaims to enforce their rights under the note, it was error to award attorneys' fees "unrelated to the enforcement of" defendants' rights under the note, including those incurred in defending the conversion claim. *Id.*

Section 8.3 of the EPA provides for indemnification by Capax of the Members in the following circumstances:

> [Capax] shall indemnify and hold harmless the Members and each of their principals, directors, officers, employees, agents, representatives, members, managers, shareholders and controlling parties and all of their successors and assigns [each a "Member Indemnified Person"], and defend each of them from and against, and will pay each Member Indemnified Person for, any and all Losses resulting from and arising out of or in connection with or relating to any of the following:
>
> **8.3.2. any breach of any agreement, covenant or obligation of the [Capax] contained herein[.]** (emphasis supplied).

The indemnification provision provides for payment for "**any and all Losses resulting from and arising out of or in connection with or relating to** . . . any breach of any agreement, covenant, or obligation of [Capax] contained" in the EPA (emphasis supplied).

Mr. Ragusa disseminated the defamatory "Fraud Alert" "in an effort to gain leverage in this litigation and/or settlement negotiations with Defendants[.]" *Capax*, 2021 WL 3909857, at *8, 11. As Defendants point out, the court found that Mr. Ragusa's "Fraud Alert included quotations from the pleadings in this case[,]" *id.* at *8, and thus arose from the subject matter of the litigation and not from extraneous events. Because the libel counterclaim "result[ed] from, and [arose] out of or in connection with or relating to" Plaintiffs' breach of the EPA, *see* EPA § 8.3.2, it triggers indemnification.

Plaintiffs argue that even if the libel claim was within the scope of the EPA's indemnification clause, Defendants' "failure to obtain more than nominal damages" on the counterclaim renders that claim "unsuccessful" for the purpose of assessing attorneys' fees. (Doc. 160 at 5.) "[T]he most critical factor in a district court's determination of what constitutes reasonable attorneys' fees in a given case is the degree of success obtained" by the prevailing party. *Barfield*, 537 F.3d at 152 (quoting *Farrar*, 506 U.S. at 114 (internal quotations omitted)). In some instances, however, "even a plaintiff who formally 'prevails' should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party." *Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996) (quoting *Farrar*, 506 U.S. at 115).

Two cases are instructive. In *Pino*, the plaintiff sought over $21 million in compensatory and punitive damages on three Title VII claims against her former supervisor and employer, but prevailed on just one claim against her former employer and received only $1 in nominal damages. The Second Circuit concluded that she was not a "prevailing party" for the purpose of awarding attorneys' fees. *Id.* ("The only way [the plaintiff] could have been less successful is if she had lost altogether, and then, of course, she would not qualify as a prevailing party."). Similarly, in *Farrar*, the Supreme Court held that a civil rights plaintiff who sought $17 million in compensatory damages but received just $1 in nominal damages was not entitled to attorneys' fees under 42 U.S.C. § 1988. 506 U.S. at 115. The Court explained that, although "a nominal damages award . . . render[s] a plaintiff a prevailing party by allowing him to vindicate his 'absolute' right to procedural due process through enforcement of a judgment against the defendant," the

award of nominal damages in a civil rights suit "highlights the plaintiff's failure to prove actual, compensable injury." *Id.* When a party "recovers only nominal damages because of [their] failure to prove an essential element of [their] claim for nominal relief, the only reasonable fee is usually no fee at all." *Id.*

In the instant case, Defendants were far more successful on the merits than the plaintiffs in *Pino* and *Farrar*. In September 2021, the court entered judgment in favor of the Members on their breach of contract counterclaim in the amount of $1,383,564. On the libel counterclaim, the court awarded Defendants Reed and Dibble nominal damages in the amount of $100 each.

Defendants pursued the libel counterclaim in good faith and obtained a judicial opinion that Plaintiffs had defamed Defendants Reed and Dibble. Although Defendants were not awarded punitive damages, they had not requested them. *See Capax*, 2021 WL 3909857, at *12 ("[A] Fraud Alert that caused no special damages and no discernible reputational harm does not warrant an award of punitive damages when no such request is contained in Defendants' counterclaim."). The court nonetheless observed that whether Mr. Ragusa's conduct constituted "outrageous conduct" for the purpose of awarding punitive damages was "a close question." *Id.* Defendants were overwhelmingly successful in every other aspect of this lawsuit. The court therefore declines to reduce the attorneys' fee award to reflect Defendants' partial success on their libel counterclaim.

**B. Calculation of Reasonable Fees and Costs.**

The court has "discretion [] to determine what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)). "[W]hen a prevailing party is entitled to attorneys' fees, the [] court "must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id.*

The court calculates attorneys' fees under the "lodestar" approach, whereby it calculates a "presumptively reasonable fee" based on a reasonable hourly rate and the reasonable number of hours required by the case. *Id.* (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008);

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). The presumption of reasonableness is "strong[,]" and the lodestar may only be adjusted in "rare and exceptional circumstances." *Perdue*, 559 U.S. at 552–53 (internal quotation marks and citations omitted). "[T]he fee applicant bears the burden of establishing entitlement to an award[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

**1. Reasonable Hourly Rate.**

"The reasonable hourly rate is the rate a paying client would be willing to pay[,] bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *accord Perdue*, 559 U.S. at 552 ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case."). In determining the hourly rate a reasonable client would be willing to pay, the court must consider case-specific variables, including:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. Other relevant case-specific variables include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989) (clarifying that the fee arrangement factor is "but a single factor and not determinative" and "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees")); *see also Arbor Hill*, 522 F.3d at 190 ("In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors[.]"). As the Second Circuit has observed, "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (internal quotation marks and citation omitted).

Defendants request hourly rates of $600 for Attorney Clasen, $445–$460 for Attorney Wheelin, and $295–$320 for Attorney Lautier. In support of this request, Defendants submit declarations from Attorneys Clasen and Wheelin reciting their qualifications and experience as well as Attorney Wheelin's explanation of Attorney Lautier's qualifications and experience.

Attorney Clasen is a partner at Robinson & Cole LLP and has practiced law since 1980. He has extensive business litigation experience in state and federal trial and appellate courts, and has tried over forty cases and at least forty arbitrations. In this case, Attorney Clasen served as lead counsel. His standard hourly rate is currently $985, which he bills to "some other clients" on similar matters. (Doc. 157 at 3, ¶ 9.) Attorney Clasen charged Defendants a discounted rate of $600 per hour.

Attorney Wheelin is a partner at Robinson & Cole LLP and was admitted to practice law in the State of Connecticut in 2004 and in the State of New York in 2005. He is "a trial lawyer who has tried more than [twenty] . . . trials and arbitrations in addition to numerous evidentiary hearings." (Doc. 156 at 2, ¶ 3.) After the associate on the case, Attorney Lautier, took parental leave in the summer of 2019, Attorney Wheelin "took the lead on finishing discovery, moving for summary judgment[,] and ultimately trying the case and handling the appeal." (Doc. 156 at 3, ¶ 10.) His current standard hourly rate is

$825, which he bills to "some other clients" on similar matters, however, he billed Defendants at a discounted rate of $445–$460 in this case.[1] (Doc. 156 at 4, ¶ 11.)

Attorney Lautier is a senior associate at Robinson & Cole LLP who has practiced law since 2014. She "has personally handled commercial litigations in multiple jurisdictions throughout the Northeast." (Doc. 156 at 3, ¶ 9.) Attorney Lautier "served as the 'day to day' associate on this litigation," with assistance from Attorney Wheelin. (Doc. 156 at 3, ¶10.) She typically bills at an hourly rate of $450 but charged Defendants a discounted rate of $295–$320.

Paralegals who assisted Defendants' attorneys billed at hourly rates of $220–$270.

Defendants assert that their hourly rates are reasonable because: (1) Defendants' counsel billed and were paid the requested rate; (2) their rates are discounted from their usual rates; (3) they are experienced and have relevant expertise; (4) their rates are consistent with rates awarded in the Southern District of New York; (5) the case was complex and required substantial work; and (6) they successfully litigated the merits of this case to a resolution in their clients' favor.

While the rate an attorney charges to paying clients may be evidence of a reasonable hourly rate, it is not dispositive. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'"). "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained[.]" *Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotations omitted). The court is not limited to assessing success on individual claims, but rather must consider "the [overall] quantity and quality of relief obtained[.]" *Id.* (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)). Defendants correctly point out that they prevailed in part on their motion to dismiss and that the court granted summary judgment in Defendants'

[1] Five entries were billed at the $445 rate. The remainder were billed at the $460 rate.

favor on each of Plaintiffs' claims. Judgment in favor of the Members on their breach of contract counterclaim and in favor of Defendants Reed and Dibble on their libel counterclaims was also entered and the court's entry of judgment was affirmed on appeal.

The case was complex and required extensive factual discovery and analysis, including a 25,000 page document production by Plaintiffs, two failed mediation attempts, and Plaintiffs' "fail[ure] to pay any portion of the judgment entered against [them]," among other complications. (Doc. 156 at 4–6, ¶¶ 13, 19, 21.)

When calculating a presumptively reasonable fee, the court looks to the "approximate market rate" in the relevant community, *Arbor Hill*, 522 F.3d at 192, which is typically defined as the district in which the district court sits. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009) ("[A] district court must first apply a presumption in favor of application of the forum rule."). District courts "may use an out-of-district hourly rate . . . in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191. For example, a party may "establish that a reasonable client would have selected out-of-district counsel because doing so would likely produce a substantially better net result," *Simmons*, 575 F.3d at 175, or that "special expertise" of out-of-district counsel is required. *Polk v. New York State Dep't. of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Absent such a showing, the court presumes that a reasonable client would "in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill*, 522 F.3d at 191. A district court judge may "rely in part on the judge's own knowledge of private firm hourly rates in the community." *See Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).

As there is no evidence that a reasonable client would need out of district counsel in this case, the court looks to the market rates for the Western District of New York to calculate reasonable fees. In the Western District, $400-$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel. *See New York v. Grand River Enters. Six Nations, Ltd.*, 2021 WL 4958653, at *4 (W.D.N.Y. Oct. 26, 2021)

(finding $500 a reasonable hourly rate for Senior Enforcement Counsel at the New York State Attorney General's Office with more than twenty years of experience); *Am. Auto. Ass'n, Inc. v. AAA Logistics, Inc.*, 2019 WL 1349283, at *6 (W.D.N.Y. Mar. 26, 2019) (reducing out-of-district partner's rate of $1,000 an hour to $500 in intellectual property case); *DIRECTV, LLC v. Wright*, 2020 WL 289156, at *2 (W.D.N.Y. Jan. 21, 2020) (finding hourly rates of $385–$490 reasonable for attorneys with fifteen to thirty-two years of experience). For experienced associates, a reasonable hourly rate is $350. *See Grand River*, 2021 WL 4958653, at *4 (finding $350 a reasonable hourly rate for an attorney with more than ten years of experience and $200 a reasonable hourly rate for an attorney with just one year of experience). As a result, a reasonable fee for Attorney Clasen is $450, a reasonable fee for Attorney Wheelin is $400, and the discounted rate of $295-$320 for Attorney Lautier is reasonable.

The hourly rates charged by paralegals in this case are also significantly higher than the hourly rate typically charged by paralegals in the Western District. *See Grand River*, 2021 WL 4958653, at *4 ("[T]he hourly rate for paralegals within this district is $100."); *DIRECTV*, 2020 WL 289156, at *2 (adjusting the hourly rate of a paralegal with an unidentified number of years of experience from $190 to $100); *Granite Music Corp. v. Center St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 739 (W.D.N.Y. 2011) (finding hourly rate of $120 reasonable for paralegal with more than twenty years of experience). The court therefore reduces the rates for paralegal assistance to $140 for a "blended rate" reflecting a range of paralegal experience in the absence of more specific information regarding each paralegal's experience.

**2. Reasonable Number of Hours.**

To determine whether the number of hours spent on a matter were reasonable, the court examines the party's contemporaneous time records. These records must "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The relevant question is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d

96, 99 (2d Cir. 1992). "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted). "[The Second Circuit] do[es] not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

Attorney Wheelin's declaration provides a thirty-three-page spreadsheet chronicling the date, timekeeper name, billed rate, hours billed, billed amount, and narrative for each time entry in the case from May 17, 2017 through August 10, 2022. In total, Attorneys Clasen, Wheelin, and Lautier and paralegals expended 2,016.9 hours over approximately five years. Courts in the Second Circuit have found thousands of hours over a span of years to be reasonable in cases like this one which involved extensive discovery and motion practice, as well as a bench trial. *See Hallmark v. Cohen & Slamowitz, LLP*, 378 F. Supp. 3d 222, 232 (W.D.N.Y. 2019) (finding 1,204.8 hours in a class action case spanning seven years consistent with cases in the Second Circuit); *Humane Soc. of U.S. v. HVFG, LLC*, 2010 WL 3322512, at *7 (S.D.N.Y. Aug. 19, 2010) (finding 2,961.28 hours reasonable in a case that lasted two and one-half years and involved cross motions for summary judgment); *Semon v. Swenson*, 2013 WL 1182224, at *6 (D. Vt. Mar. 21, 2013) (finding 3,250 hours over three years reasonable when "parties engaged in extensive motion practice and discovery—litigating virtually every aspect of the case" in securities litigation).

Although Plaintiffs argue that Defendants' time records include "clear instances of excessive charges,"[2] "[w]here, as is the case here, 'the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of

[2] For example, Plaintiffs noted that Attorney Lautier spent over eighty-three hours drafting Defendants' motion to dismiss, which the court agrees is excessive.

the hours spent.'" *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (quoting *Yea Kim v. 167 Nail Plaza, Inc.*, 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009)). In light of the complexity of this case, the numerous discovery disputes, the substantial motion practice, and the multi-day bench trial, only a modest reduction of ten percent across the board is appropriate.

Plaintiffs next point out that Defendants have billed for travel time at their normal billing rates when travel time is typically compensated at half the normal rate in the Second Circuit. *See Beckford v. Irvin*, 60 F. Supp. 2d 85, 89 (W.D.N.Y. 1999) ("[I]t is appropriate to reimburse attorney[]s for their travel time at 50% of their normal hourly billing rate."); *Suk Joon Ryu v. Hope Bancorp, Inc.*, 2018 WL 4278353, at *7 (S.D.N.Y. Aug. 29, 2018) (finding hours billed for travel time unreasonable given that courts typically approve fees at 50% of an attorney's usual rate for hours spent traveling).

Defendants cite to *Sulkowska v. City of New York* to show that courts in this Circuit have, on occasion, declined to reduce attorneys' hourly rate for time spent in transit. 170 F. Supp. 2d 359, 369 (S.D.N.Y. 2001). In *Sulkowska*, the plaintiffs' attorneys "only billed for travel time where its lawyers attended a conference, hearing, or deposition, which affect[ed] few entries." *Id.* Because the plaintiffs' attorneys were not located in Manhattan, the court found it "reasonable to expect the firm to bill plaintiff for lawyers' travel to and from the city to attend conferences and depositions." *Id.* Here, in contrast, travel time affected more than a handful of entries. While Defendants contend that deposing Capax's representatives required travel to Florida, the majority of travel time was within New York and was billed by Attorney Wheelin at $460 per hour. At times, Attorney Wheelin spent more time traveling to and from a deposition than at the deposition itself. *See Wilder v. Bernstein*, 975 F. Supp. 276, 283 (S.D.N.Y. 1997) ("Although it is within the [c]ourt's discretion to compensate counsel for travel time at full hourly rates, . . . courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates.") (internal citations omitted). To reflect the substantial travel time at issue, travel time will therefore be compensated at half the approved hourly rate.

Beyond these deductions, Defendants' time entries are sufficiently detailed and specific and support the fees incurred and Defendants' counsel have not engaged in "block billing." *Cf. Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) (finding time entries stating merely "trial preparation," "witness preparation," and "legal research" not specific enough for court to determine whether hours were duplicative or excessive).

Finally, Plaintiffs argue that when Attorney Lautier took parental leave, she should have been replaced by an attorney who billed at a similar rate rather than by Attorneys Wheelin and Clasen, whose billing rates are significantly higher. "[F]ailure to delegate work to junior, less expensive attorneys may be grounds for reducing an award of attorney's fees." *Winkler v. Metro. Life Ins. Co.*, 2006 WL 2347826, at *2 (S.D.N.Y. Aug. 10, 2006); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1197 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980) ("Many of the functions performed by the partners could have been satisfactorily accomplished by associates, with a considerable saving in fees."). In this case, however, in light of the reductions already applied, the court cannot conclude that a junior, less expensive attorney was required, or even an attorney who billed at a comparable rate.

**3. Calculation of Reasonable Fees.**

Based on the court's reduced hourly rates for Attorney Clasen, Attorney Wheelin, and paralegals, the total fee amount for all timekeepers on this matter is $734,831.12.

| Timekeeper Name | Hourly Rate | Hours Billed | Total Cost |
|---|---|---|---|
| Attorney Clasen | $450 | 221.6 | $99,720 |
| Attorney Wheelin | $400 | 985 | $394,000 |
| Attorney Lautier | $295-320 | 741.2 | $231,437.12 |
| Mr. Anderson | $140 | 4.3 | $602 |
| Mr. Hardisty | $140 | 5.5 | $770 |
| Mr. Lopes | $140 | 7.4 | $1,036 |
| Ms. Yaikbaeva | $140 | 51.9 | $7,266 |

| | Total: | 2,016.9 | $734,831.12 |
|---|---|---|---|

Because Defendants' counsel's travel time is discounted by fifty percent, the court has reduced twenty-seven travel entries which account for $54,249.00 in attorneys' fees. The court reduces Attorney Wheelin's hourly rate to $400 to recalculate the total travel time billed and then reduces that number by half to a total of $24,019.50.

| Date | Timekeeper Name | Hourly Rate | Description | Hours Billed | Total Cost |
|---|---|---|---|---|---|
| 9/25/2017 | Attorney Lautier | $295 | Travel to Buffalo to attend oral argument. | 4.5 | $1,327.50 |
| 9/25/2017 | Attorney Wheelin | $400 | Travel to Buffalo to attend oral argument. | 4.5 | $1,800.00 |
| 9/26/2017 | Attorney Lautier | $295 | Travel back from Buffalo. | 4.5 | $1,327.50 |
| 9/26/2017 | Attorney Wheelin | $400 | Travel from Buffalo, NY re oral argument. | 4.3 | $1,720.00 |
| 6/25/2018 | Attorney Lautier | $320 | Travel to and from Buffalo. | 9.7 | $3,104.00 |
| 2/25/2019 | Attorney Wheelin | $400 | Travel to Grossman deposition. | 4.8 | $1,920.00 |
| 2/26/2019 | Attorney Wheelin | $400 | Travel from Christopher Grossman deposition. | 5.4 | $2,160.00 |
| 3/24/2019 | Attorney Wheelin | $400 | Travel to Naples for depositions. | 6.4 | $2,560.00 |
| 3/28/2019 | Attorney Wheelin | $400 | Travel from depositions. | 6.6 | $2,640.00 |
| 5/6/2019 | Attorney Wheelin | $400 | Travel to Thomson deposition. | 5.5 | $2,200.00 |
| 5/7/2019 | Attorney Wheelin | $400 | Travel from Thomson deposition. | 5.8 | $2,320.00 |
| 5/21/2019 | Attorney Wheelin | $400 | Travel from Alta office in Concord Mass after deposition preparation session. | 2.7 | $1,080.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/21/2019 | Attorney Wheelin | $400 | Travel to Alta's office (Concord Mass) for client deposition preparation. | 2.8 | $1,120.00 |
| 5/28/2019 | Attorney Wheelin | $400 | Travel to client depositions. | 3.2 | $1,280.00 |
| 5/31/2019 | Attorney Wheelin | $400 | Travel from client depositions. | 3.6 | $1,440.00 |
| 6/13/2019 | Attorney Wheelin | $400 | Travel to Virginia for continued Chris Grossman Deposition. | 5.4 | $2,160.00 |
| 6/14/2019 | Attorney Wheelin | $400 | Travel from Grosman Deposition in Virginia. | 6.2 | $2,480.00 |
| 9/24/2019 | Attorney Wheelin | $400 | Travel to Buffalo for Besaw Deposition. | 6.5 | $2,600.00 |
| 9/25/2019 | Attorney Wheelin | $400 | Travel from Besaw deposition. | 6.5 | $2,600.00 |
| 3/2/2020 | Attorney Wheelin | $400 | Travel from oral argument in Buffalo. | 6.4 | $2,560.00 |
| 3/2/2020 | Attorney Wheelin | $400 | Travel to Buffalo NY for oral argument in summary judgment motion. | 6.1 | $2,440.00 |
| 4/18/2021 | Attorney Wheelin | $400 | Travel to Boston for first day of trial. | 2.5 | $1,000.00 |
| 4/20/2021 | Attorney Wheelin | $400 | Travel from Boston. | 2.5 | $1,000.00 |
| 6/9/2021 | Attorney Wheelin | $400 | Travel to Boston for continued trial. | 1.7 | $680.00 |
| 6/10/2021 | Attorney Wheelin | $400 | Travel from Boston. | 2.7 | $1,080.00 |
| 6/16/2022 | Attorney Wheelin | $400 | Travel to oral argument on appeal. | 1.8 | $720.00 |
| 6/16/2022 | Attorney Wheelin | $400 | Travel from oral argument on appeal. | 1.8 | $720.00 |
| | | | **Total:** | 124.4 | $48,039.00 |

| | | |
|---|---|---|
| | **Reduced by 50%:** | $24,019.50 |

The court then subtracts the $24,019.50 reduction in hours billed for travel time from the adjusted-rate fee amount of $734,831.12 for a total of $710,811.62. As a final step, the court reduces this number by ten percent across the board for a total fee award of $639,730.46.

**4. Costs and Expenses.**

In the Second Circuit, "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989). These expenses must be "incidental and necessary" to the representation. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Attorney Wheelin's declaration includes a seven-page spreadsheet detailing counsels' costs between June of 2017 and June of 2022 consisting of payments to vendors for document production services, deposition expenditures, shipping and mailing costs, mediation and transcript fees, and reimbursements for airfare, lodging, parking, and car services. Plaintiffs do not appear to contest Defendants' request for costs. The court therefore finds Defendants' request for $81,015.75 in costs reasonable.

## CONCLUSION

For the foregoing reasons, Defendants' motion for attorneys' fees and expenses, totaling an adjusted $639,730.46 is GRANTED (Doc. 154). The court hereby ORDERS Plaintiffs to pay $639,730.46 in attorneys' fees and costs in the amount of $81,015.75 within thirty (30) days of this Order.

SO ORDERED.

Dated this 10th day of January, 2023.

Christina Reiss, District Judge
United States District Court